IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SUSAN BASH,                          )
                                     )
         Plaintiff,                  )
                                     )    Civil Action No. 13-741
         v.                          )    United States Magistrate Judge
                                     )    Cynthia Reed Eddy[1]
CAROLYN W. COLVIN,                   )
Commissioner of Social Security,     )
                                     )
         Defendant.                  )

**MEMORANDUM OPINION**

**I.     Introduction**

Plaintiff Susan Bash brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security ("Defendant" or "Commissioner") denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act (Act), 42 U.S.C. §§401-34. The parties have submitted cross motions for summary judgment and the record has been fully developed at the administrative proceedings. For the following reasons, Plaintiff's Motion for Summary Judgment (ECF No. 10) will be granted. The Commissioner's Motion for Summary Judgment (ECF No. 13) will be denied. The administrative decision of the Commissioner will be reversed, and Plaintiff will be awarded DIB.

---

[1] By consent of the parties, (ECF Nos. 6, 7), pursuant to 28 U.S.C. § 636(c), the undersigned has full "authority over dispositive motions…and entry of final judgment, all without district court review." *Roell v. Withrow*, 538 U.S. 580, 585 (2003); *In re Search of Scranton Hous. Auth.*, 487 F.Supp.2d 530, 535 (M.D.Pa. 2007).

II. **Procedural History**

Plaintiff protectively filed for DIB on March 9, 2010, alleging onset of disability on May 15, 2009.[2] (R. at 149-153).[3] The application was denied by the state agency on August 27, 2010 and Plaintiff responded on October 15, 2010 by filing a timely request for an administrative hearing. (R. at 69-73, 81). On September 13, 2011, an administrative hearing was held in Johnstown, Pennsylvania before Administrative Law Judge ("ALJ") Marty R. Pillion. (R. at 42-65). Plaintiff, who was represented by counsel, appeared and testified. *Id*. Additionally, an impartial vocational expert, Irene H. Montgomery, testified at the hearing. *Id*.

In a decision dated October 7, 2011, the ALJ determined that Plaintiff was not "disabled" within the meaning of the Act since Plaintiff's alleged onset of disability, so her claims for disability benefits were denied. (R. at 23-41). The Appeals Council denied Plaintiff's request for review on March 27, 2013, thereby making the ALJ's decision the final decision of the Commissioner in this case. (R. at 1-8).

Plaintiff commenced the present action on May 29, 2013, seeking judicial review of the Commissioner's decision. (ECF No. 1). Plaintiff and the Commissioner filed cross-motions for summary judgment on October 3, 2013 and December 16, 2013, respectively. (ECF Nos. 10, 13). These motions are the subject of this memorandum opinion.

III. **Factual Background**

Plaintiff was born on July 2, 1961 and was 50 years of age at the time of the administrative hearing. (R. at 33). Plaintiff graduated from high school and completed three years of college. (R. at 47). Plaintiff has worked as a food preparation manager/baker, food

---

[2] In his decision, the ALJ lists March 15, 2009 as Plaintiff's alleged onset of disability despite Plaintiff's counsel clarifying at the hearing that the appropriate date is May 15, 2009. (R. at 23, 45-46).
[3] Citations to ECF Nos. 5-2-21, the Record, *hereinafter*, "R. at ___."

preparation employee, mail carrier, and retail manager. (R. at 60-61). On May 15, 2009, Plaintiff quit her job, and alleged onset of disability on the same day. (R. at 149-153).

The medical record provides that Plaintiff has had extensive medical treatment relating to several medical impairments. Plaintiff began experiencing abdominal pain in 2002 and has seen at least six different gastroenterologists regarding her abdominal problems.[4] (R. at 527). Plaintiff has been assessed with having inflammatory bowel disease, Crohn's disease, irritable bowel disease, gastroesophageal reflux disease, long-term high risk immunosuppression, ulcerative colitis, chronic abdominal pain, and gastroparesis. (R. at 467, 468, 528, 530, 690-692). Plaintiff consistently reported that abdominal pain was her worst symptom, and also reported having acid reflux, diarrhea, fatigue, headaches, eczema, multiple joint complaints, dizziness, lightheadedness, memory loss, nervousness, depression, and insomnia. (R. at 471-473, 477). In February 2011, Dr. Amin, one of Plaintiff's treating gastroenterologists, opined that Plaintiff would be absent from work as a result of her gastrointestinal impairments at least three times per month. (R. at 689). Additionally, Dr. Amin opined that Plaintiff would have to be away from her work station, on average, two to three times per day for approximately ten to fifteen minutes each time, and would have less than two minutes advance notice. (R. at 689).

---

[4] Plaintiff began treatment with Paul Lebovitz, M.D., in September 2009, after previously treating with Mary Ann Barnacle, M.D., and Shirish Amin, M.D. (R. at 463-478, 527-528). Plaintiff treated with Jorge Vasquez, M.D., beginning in October 2009, and was put on a gastroparesis diet (more liquid than solid foods) to address her gastroparesis and diarrhea symptoms. (R. at 467). When Plaintiff followed said diet, "she experienced a very good response with pain and symptoms and weight loss," although she subsequently stopped the program and her "eating style ha[d] become chaotic and unreliable." (R. at 609). Plaintiff also received treatment from Victor Lan, M.D., and Abhijit Kulkarni, M.D. (R. at 590-606). Dr. Kulkarni examined Plaintiff, on referral from Dr. Lebovitz, in May and June of 2010 regarding Plaintiff's abdominal pain as well as her "ongoing management of her inflammatory bowel disease and the rest of her gastroenterologic issues. (R. at 597). Also in June 2010, Plaintiff treated at the Cleveland Clinic Foundation on referral from Dr. Lebovitz because she had experienced "no relief for her abdominal pain." (R. at 477).

Plaintiff also sought treatment for headaches.[5] Plaintiff began seeing neurologist Mihaela Mihaescu, M.D. in October 2010, and was examined by Dr. Mihaescu every two months until April 2011. (R. at 678-680, 695). At the initial consultation, Dr. Mihaescu noted that Plaintiff had experienced significant side effects from previous medications and started Plaintiff on Neurontin medication. (R. at 678-680). At a follow-up appointment in December 2010, Dr. Mihaescu stated that Plaintiff's headaches had decreased from eleven in the previous month to seven in the current month, Plaintiff had tolerated Neurontin well, which helped with her headaches, dizziness, insomnia, and moods, and that the dosage could be increased. (R. at 675-676). However, in April 2011, Dr. Mihaescu recorded that the increased dosage of Neurontin was "helping to some extent but not completely" and Plaintiff could not tolerate any additional increases in dosage of Neurontin. (R. at 693).

Dr. Mihaescu stated that despite the medications helping, Plaintiff was experiencing between five to seven headaches per month. *Id.* On days that Plaintiff had headaches, she had "fairly significant limitation[s] . . . because of her intolerance to lights, smells, sounds and difficulty concentrating and occasionally the left sided weakness. Her nausea is also a factor in her inability to function properly." (R. at 694). Plaintiff was diagnosed with "mixed-headache disorder with tension headaches, complicated migraines and chronic insomnia." (R. at 693). Dr. Mihaescu opined that Plaintiff could not be "gainfully employed full time in competitive work, because of the frequency and severity of the migraines when the[y] occur." (R. at 694).

---

[5] Plaintiff participated in physical therapy from November 2009 to April 2010, attending at least twenty-seven sessions. (R. at 342-356, 436-459). Plaintiff reported varying levels of pain throughout the physical therapy treatment. At sessions in December 2009 and January 2010, Plaintiff reported decreased frequency and intensity of headaches. (R. at 343, 456). At two sessions in February 2010, Plaintiff reported increased headaches, including a migraine. (R. at 448-449). Dr. Lebovitz, Plaintiff's gastroenterologist, recorded that Plaintiff's "headaches have gotten better related to her physical therapy." (R. at 474).

Dr. Mihaescu estimated that Plaintiff would need to be absent from work at least three times per month. (R. at 699).

Plaintiff also received mental health treatment. Plaintiff treated with multiple mental health physicians on referral from both her gastroenterologists and neurologist.[6] Plaintiff received treatment relating to her underlying mental health conditions and also had her medications monitored and adjusted in relation to any side effects she experienced. Plaintiff was diagnosed with generalized anxiety disorder, major depression, bipolar disorder, pain disorder without agoraphobia, and stressors. (R. at 484, 716).

## IV. The ALJ's Decision

On October 7, 2011, the ALJ issued a written decision, finding that Plaintiff had not been under a disability within the meaning of the Act since her alleged onset of disability. (R. at 34). The ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset of disability and concluded that Plaintiff had the following severe impairments: Crohn's disease, gastroesophageal reflux disease, irritable bowel syndrome, long-term risk immunosuppression, mixed headache disorder, migraine headaches, chronic tension headaches, gastroparesis, osteoarthritis of the knees, diabetes mellitus, generalized anxiety disorder, major depressive disorder, bipolar disorder, dysthymic disorder, adjustment disorder, and panic disorder without agoraphobia. (R. at 25). The ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings"). (R. at 26).

The ALJ concluded that Plaintiff has the residual functional capacity ("RFC") to

---

[6] In October 2009, Plaintiff began treating with clinical psychologist Barbara Jean Nagrant, Ph.D. (R. at 483). Plaintiff went to seven outpatient psychotherapy sessions with Dr. Nagrant. *Id.* In November 2009, Plaintiff started treating with psychiatrist Alicia Kaplan, M.D., regarding psychiatric medications. (R. at 386-410, 483). In January 2011, Plaintiff began treatment with Richard Cassone, M.D. (R. at 716).

5

> perform light work as defined in 20 CFR 404.1567(b) and 419.967(b) except she is limited to occasional balancing, stooping, crouching, crawling, kneeling, and climbing ramps and stairs, no climbing ropes, ladders or scaffolds, no exposure to hazards such as heights or moving machinery, simple, routine, repetitive tasks and simple work-related decisions, and no fast-paced production requirements as seen in assembly line work, would need to alternate to sitting for five minutes after every half-hour of standing, and is limited to infrequent changes in work setting defined as no more than one per day, occasional interaction with co-workers and supervisors, and no interaction with the public.

(R. at 28).

The ALJ determined that while Plaintiff could not perform any past relevant work, based upon testimony from a vocational expert, Plaintiff could perform jobs that existed in significant numbers in the national economy. (R. at 33). Accordingly, the ALJ found that Plaintiff was not disabled within the meaning of the Act. (R. at 34).

## V.     Standard of Review

To be eligible for Social Security benefits under the Act, a claimant must demonstrate to the Commissioner that he or she cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); *Brewster v. Heckler*, 786 F.2d 581, 583 (3d Cir.1986). When reviewing a claim, the Commissioner must utilize a five-step sequential analysis to evaluate whether a claimant has met the requirements for disability. 20 C.F.R. §§ 404.1520, 416.920.

The Commissioner must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or a combination of impairments that is severe; (3) whether the medical evidence of the claimant's impairment or combination of impairments meets or equals the criteria set forth in the Listings;

(4) whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); see *Barnhart v. Thomas*, 540 U.S. 20, 24–25 (2003). If the claimant is found to be unable to resume previous employment, the burden shifts to the Commissioner at Step 5 to prove that, given claimant's mental or physical limitations, age, education, and work experience, he is able to perform substantial gainful activity in jobs in the national economy. *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir.1986).

Judicial review of the Commissioner's final decisions on disability claims is provided by statute, and is plenary as to all legal issues. 42 U.S.C. §§ 405(g), 1383(c)(3); *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir.1999). Section 405(g) permits a district court to review the transcripts and records upon which a determination of the Commissioner is based; the court will review the record as a whole. See 5 U.S.C. § 706. The District Court must then determine whether substantial evidence exists in the record to support the Commissioner's findings of fact. *Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir.2002).

Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate" to support a conclusion. *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir.1995)(quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). If the Commissioner's findings of fact are supported by substantial evidence, they are conclusive. 42 U.S.C. § 405(g); *Richardson*, 402 U.S. at 390. A District Court cannot conduct a *de novo* review of the Commissioner's decision nor re-weigh the evidence of record; the Court can only judge the propriety of the decision in reference to the grounds invoked by the Commissioner when the decision was rendered. *Palmer v. Apfel*, 995

F.Supp. 549, 552 (E.D.Pa.1998); *S.E.C. v. Chenery Corp.*, 332 U.S. 194, 196–97 (1947). The court will not affirm a determination by substituting what it considers to be a proper basis, *Chenery*, 332 U.S. at 196–197. Further, "even where this court acting *de novo* might have reached a different conclusion . . . so long as the agency's fact finding is supported by substantial evidence, reviewing courts lack power to reverse either those findings or the reasonable regulatory interpretations that an agency manifests in the course of making such findings." *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190–1091 (3d Cir.1986).

## VI.    Discussion

In support of her Motion for Summary Judgment, Plaintiff argues that the ALJ erred by: (1) failing to properly evaluate the medical evidence and (2) failing to properly evaluate Plaintiff's subjective complaints. Plaintiff's Brief (ECF No. 11), at 23-30. The Commissioner counters that (1) substantial evidence supports the ALJ's conclusion that Plaintiff could perform a range of light, unskilled work with a "sit/stand" option and numerous additional restrictions, and that (2) the ALJ complied with the regulations when evaluating Plaintiff's credibility, and substantial evidence supports the ALJ's analysis. Defendant's Brief (ECF No. 16), at 14-20. After a complete review of the record, the Court agrees with Plaintiff, holding that neither the ALJ's evaluation of the medical evidence nor his evaluation of Plaintiff's subjective complaints are supported by substantial evidence.[7]

### A.    Evaluation of the Medical Evidence

Plaintiff first argues that the ALJ erred by failing to properly evaluate the medical evidence concerning Plaintiff's gastrointestinal disorders and headaches. Plaintiff's Brief (ECF

---

[7] After the ALJ's decision and pursuant to her request for review, Plaintiff submitted additional medical records to the Appeals Council. (R. at 754-807). The Court has not considered the additional records. *See Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001) (the Court can only consider whether the ALJ's decision is supported by substantial evidence and free of legal error on the basis of the record as it existed when the ALJ rendered his or her decision).

No. 11), at 23-28. If an ALJ does not give the treating physician's opinion controlling weight, then he is to consider the examining relationship, the treating relationship, supportability of the opinion afforded by medical evidence, consistency of opinion with the record as a whole, specialization of the treating physician, and various other factors. 20 C.F.R. §§ 404.1527(c). While the ALJ is solely responsible for determining whether a claimant is disabled, 20 C.F.R. § 404.1527(d)(1), an ALJ may not reject a treating physician's opinion outright in the absence of contradictory medical evidence. *Brownawell v. Comm'r of Soc. Sec.*, 554 F. 3d 352, 355 (3d Cir. 2008) (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)). The ALJ "is not free to employ [his or] her own expertise against that of a physician who presents competent medical evidence." *Plummer*, 186 F.3d at 429. The rejection of a medical opinion cannot be based solely on an administrative law judge's "own credibility judgments, speculation or lay opinion." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000).

Plaintiff asserts that the ALJ improperly rejected the opinion of her treating neurologist, Dr. Mihaescu. *Id.* at 24-26. The ALJ acknowledged that Dr. Mihaescu opined that Plaintiff "would be absent over three days per month, and could not be employed in full-time competitive work due to the frequency and severity of the claimant's headaches." (R. at 30). Notwithstanding, the ALJ concluded that Dr. Mihaescu's opinion was "inconsistent with [Dr. Mihaescu's] notes, which indicated the claimant's headaches were less frequent and milder." *Id.* In other words, the ALJ found that he could interpret Dr. Mihaescu's *own* notes better than Dr. Mihaescu, a specialist.

Moreover, such a conclusion is a mischaracterization of Dr. Mihaescu's records. Dr. Mihaescu stated that Plaintiff's medications "have helped, *to some extent*, but she still gets at least 5 to 7 headaches a month," adding that the headaches "are *somewhat* milder than they were

9

prior to the preventative medication." (R. at 693) (emphasis added). Dr. Mihaescu went on to say that Plaintiff "has fairly significant limitation[s] during the days when she has a headache, because of her intolerance to lights, smells, sounds and difficulty concentrating and occasionally the left-sided weakness" and "her nausea is also a factor in her inability to function properly." (R. at 694). Dr. Mihaescu ultimately concluded that Plaintiff's headaches "have transformed over the years, only getting worse" and opined that she cannot "be gainfully employed full time in competitive work, because of the frequency and severity of the migraines when the[y] occur." *Id*. The Court finds that the ALJ's evaluation of Dr. Mihaescu's notes and opinion is not supported by substantial evidence. The ALJ's interpretation of this evidence was highly selective and is belied by a reading of the records as a whole. Without any contradictory medical evidence, the ALJ replaced a treating physician's opinion with his own lay opinion, which constitutes error.

The ALJ also argued that Dr. Mihaescu's "opinion is inconsistent with the rest of the documentary evidence in the file." (R. at 30). This is problematic, however, because the ALJ's analysis of documentary evidence consisted of statements that were either factually incorrect or misleading. The ALJ asserted that in December 2009, Plaintiff reported decreased frequency of headaches at a physical therapy session. *Id.* While this is true, the ALJ failed to mention that at two later sessions in February 2010, Plaintiff reported "increased head and neck pain" and "increased headaches today and a migraine focusing on the left side today." (R. at 448-449). The ALJ next asserted that in June 2010, Plaintiff reported that she "experienced headaches once a month with intermittent nausea and some photophobia and sonophobia." (R. at 30). However, Plaintiff reported that she had a *migraine* about once a month and had "*constant daily headache[s]*." (R. at 522) (emphasis added). The ALJ then claimed that in December 2010,

10

Plaintiff reported that her medication, Neurontin, had helped with her headaches and dizziness, and in April 2011, Plaintiff reported that her headaches were less frequent and milder. (R. at 30). These records referenced by the ALJ, however, are the medical records of Dr. Mihaescu. As already addressed above, the ALJ improperly evaluated these records, replacing a treating specialist's opinion with his own lay opinion, and citing to these records out of context.

In dismissing Dr. Mihaescu's opinion, the ALJ also asserted that "the evidence shows the claimant's activities of daily living were inconsistent with such restriction." *Id.* However, the Court agrees with Plaintiff that the ALJ's assessment of her activities of daily living is unreasonable and that "nothing about Plaintiff's description of her activities suggests that she participates in any active pursuits when she has a headache." Plaintiff's Brief (ECF No. 11), at 25. As discussed more fully below, the ALJ's credibility determination of Plaintiff is not supported by substantial evidence. Accordingly, the ALJ erred by relying on Plaintiff's activities of daily living to support his decision to reject Dr. Mihaescu's opinion.

Plaintiff also argues that the ALJ erred with respect to his evaluation of Plaintiff's gastrointestinal impairments, stating that "the medical record amply demonstrates that Plaintiff suffers from significant abdominal pain, frequent and unpredictable bowels [sic] movements, and at times, incontinence." Plaintiff's Brief (ECF No. 11), at 26 (citing R. at 471-473, 474-476, 594, 522, 609, 684-689). Plaintiff argues that the ALJ's assessment of her residual functional capacity ("RFC") is flawed because the ALJ failed to account for Plaintiff's need to use and be near a bathroom. *Id.* The Court agrees with Plaintiff.

In his decision, the ALJ found that Plaintiff has severe impairments relating to Crohn's disease and severe irritable bowel syndrome. (R. at 25). At the administrative hearing, Plaintiff testified that, in general, she must stay close to a bathroom at least two to three times per week

until at least lunch time because of unexpected bowel movements. (R. at 48-49). The medical records corroborate this testimony. For example, Dr. Amin, one of Plaintiff's treating gastroenterologists, opined that Plaintiff requires a job that permits ready access to a restroom, estimated that she would be away from her work station an average of two to three times per day and each time would take ten to fifteen minutes, and Plaintiff would only have less than two minutes advanced notice. (R. at 688-689). If a claimant's complaints of pain are supported by medical evidence, the "complaints should then be given 'great weight' and may not be disregarded unless there exists contrary medical evidence." *Mason v. Shalala*, 994 F.2d 1058, 1067-1068 (3d Cir. 1993). The ALJ does not point to any evidence or opinion to contradict Plaintiff's testimony. Further, the vocational expert testified that if a hypothetical individual assigned to perform a light range of work required "one extra unscheduled 10-minute break during the eight-hour work day," such a requirement "would compromise the positions on a full-time basis." (R. at 62).

Despite the testimony from Plaintiff and the vocational expert regarding bathroom requirements, the ALJ's assessment of Plaintiff's RFC is silent as to this issue, without explanation. An ALJ "must give some indication of evidence which he rejects and his reason(s) for discounting such evidence." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000). The ALJ's analysis of Plaintiff's RFC is incomplete here, as he does not consider Plaintiff's need to be physically close to a bathroom or the time that Plaintiff would be away from her work because of her bathroom needs.

The Court also agrees with Plaintiff that "the ALJ's evaluation of the effect of Plaintiff's chronic abdominal pain is [] unreasonable," because the ALJ "minimizes Plaintiff's pain, suggesting that it must not be that bad because physical examinations were essentially

unremarkable and an esophogram was only mildly abnormal." Plaintiff's Brief (ECF No. 11), at 27, n. 15 (citing (R. at 29)). The ALJ's finding that "the evidence shows the claimant experienced only some tenderness" is unsupported by anything other than the ALJ's lay opinion. (R. at 29). Moreover, this finding is contrary to the vast medical records from Plaintiff's treating physicians. Dr. Lebovitz noted that Plaintiff's "abdominal pain bother[ed] her the most" and she had "no relief for her abdominal pain," so he referred Plaintiff to visit the Cleveland Clinic. (R. at 473, 477). The records from the Cleveland Clinic indicate that Plaintiff had "seen six doctors about her abdominal pain" and was diagnosed with chronic abdominal pain. (R. at 522, 530). Aside from the ALJ's own interpretation of these medical records, the ALJ does not rely on any objective medical evidence to support his position that Plaintiff's abdominal pain is less severe than she claims.

The ALJ also improperly dismissed the opinion of Plaintiff's treating physician, Dr. Amin, regarding her gastrointestinal impairments. The ALJ acknowledged that Dr. Amin opined that Plaintiff's impairments would cause her to be absent from work at least three days per month. (R. at 30, 684-689). However, the ALJ concluded that "the claimant's activities of daily living were inconsistent with such a restriction, and [Dr. Amin's] opinion is inconsistent with [his] own notes, which indicated that physical examinations were generally normal." (R. at 30). This is error for the same reasons discussed above regarding the ALJ's analysis of Dr. Mihaescu's opinion: the ALJ improperly dismissed the opinion of a treating physician based solely on his credibility determination, speculative inferences from the medical records, and lay opinion. *See Morales*, 225 F.3d at 317.

### B.     Evaluation of Plaintiff's Credibility

Plaintiff also contends that the ALJ erred in assessing her subjective complaints. Plaintiff's Brief (ECF No. 11), at 28-30.  When assessing a claimant's credibility regarding the intensity and persistence of his symptoms, an ALJ must compare the claimant's subjective allegations of pain and other limitations with the objective medical evidence.  20 C.F.R. § 404.1529(c).  A claimant's subjective complaints must be given "serious consideration" whenever the record establishes the existence of a medically determinable impairment that could reasonably be expected to cause the symptoms described in his or her testimony.  *Mason v. Shalala*, 994 F.2d 1058, 1067-1068 (3d Cir. 1993).  Although there is generally great deference given "to an ALJ's credibility determination because he or she has the opportunity at a hearing to assess the witness's demeanor," reviewing courts "retain a responsibility to scrutinize the entire record and to reverse or remand if the [Commissioner]'s decision is not supported by substantial evidence."  *Reefer v. Barnhart*, 326 F.3d 376, 380 (3d Cir. 2003); *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (quoting *Smith v. Califano,* 637 F.2d 968, 970 (3d Cir. 1981)) (internal quotation omitted).

The ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not credible to the extent they are inconsistent with the above residual functional capacity."  (R. at 29).  The ALJ stated that "notes from the documentary medical evidence reveal the claimant experienced tenderness in the abdomen, diarrhea, nausea, and difficulty swallowing, but the claimant *denied experiencing vomiting*."  *Id.* (emphasis added).  It is incongruous to conclude that Plaintiff's condition is less severe than she claims merely because she was not experiencing vomiting despite all of the other conditions documented in her medical records.

The ALJ also discussed the following in assessing Plaintiff's credibility:

> there is no evidence that the claimant experiences significant side effects from her medications or that her medications have been frequently changed or the dosages altered due to side effects and/or ineffectiveness. In fact, the claimant reported in December 2010 that Neurontin helped with her headaches, dizziness, insomnia and moods and in April 2011 the claimant's neurologist reported [that] with Neurontin the claimant's headaches were less frequent and milder in severity. Likewise, there is no evidence the claimant has been prescribed an assistive device for ambulation. Finally, it is noted that the claimant has not required aggressive medical treatment, frequent hospital confinement and/or emergency room care or surgical intervention for her condition notwithstanding her allegations of totally disabling symptomology.

(R. at 32) (internal citations omitted). Such an assessment of Plaintiff's credibility is contrary to both the objective medical records and applicable law.

Substantial evidence does not support the ALJ's statement regarding the effects of Plaintiff's medication. As addressed above, the ALJ improperly evaluated the December 2010 and April 2011 medical records, and therefore, his reliance on the same is invalid. Moreover, there is no evidence in the record to support the ALJ's position. The objective medical evidence is replete with treating physicians adjusting Plaintiff's medication and discussing the side effects of the medication on Plaintiff. Dr. Lebovitz, a treating gastroenterologist, noted on September 22, 2009 that Plaintiff's treating physicians had "been ramping up her medications." (R. at 471). On April 13, 2010, Dr. Lebovitz noted that Plainitff has "not been able to take Imuran up to any higher dosage because it makes her feel sick and dizzy." (R. at 474). Dr. Lebovitz also observed that Plaintiff's "psychiatric medicines could be playing some role in her symptom complex" and so it is "important that she work with her psychiatric team as we go forward." (R. at 477). Plaintiff's records from June 21, 2010 state that she had to stop taking her headache medications due to side effects and that she had been having daily headaches "for the past 6 months which

15

she treats without meds." (R. at 528). On October 18, 2010, when Plaintiff's treating neurologist, Dr. Mihaescu, explained to Plaintiff the potential side effects of starting Neurontin, especially personality and mood changes, Plaintiff replied that "she is already very tearful since the Effexor was increased to 225 mg a day and she will discuss that with her psychiatrist." (R. at 593). In April 2011, Dr. Mihaescu noted that Plaintiff's current dose of Neurontin had been "helping to some extent but not completely" and that she had "not tolerated higher doses of Neurontin." (R. at 693). Additionally, Dr. Mihaescu recorded that Plaintiff "has had side effects from Imitrex and Amerge and overall she cannot use anything in that class." *Id.* Thus, the ALJ's credibility finding with respect to the effectiveness of the medications and lack of side effects is without merit.

The ALJ's conclusion that Plaintiff's credibility is diminished because she had not "been prescribed an assistive device for ambulation" or "required aggressive medical treatment, frequent hospital confinement and/or emergency room care or surgical intervention for her condition notwithstanding her allegations of totally disabling symptomology" is equally without merit. "Disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity," *Smith,* 637 F.2d at 971, nor does it "mean that a claimant must be quadriplegic or an amputee." *Rieder v. Apfel*, 115 F.Supp.2d 496, 505 (M.D. Pa. 2000). In *Hovis v. Astrue*, 2008 WL 4371775, at *7 (W.D. Pa. 2008), the Court found that the ALJ's decision was not supported by substantial evidence when it was based on a "lack of medical records, including lack of hospitalization, lack of emergency room treatment and lack of episodes of decompensation," instead of objective contradictory medical evidence. The same reasoning applies here.

Finally, Plaintiff asserts that the ALJ erred in assessing her credibility based on her activities of daily living, arguing that the ALJ failed to "take into account Plaintiff's qualification that she does not engage in the activities listed by the ALJ on bad days."  Plaintiff's Brief (ECF No. 11), at 29-30.  There is an abundance of objective medical evidence, which the ALJ ignores, to support Plaintiff's argument that she is unable to do many, if not all, of the activities listed by the ALJ on days that Plaintiff has migraines and/or headaches.  Moreover, the ALJ has not identified any evidence that points to the contrary.  In fact, the ALJ found Plaintiff's work at a family-owned tree farm undermined her credibility, but neglected to mention that the type of work performed was "filing work," and Plaintiff reported that she had to "vary her activity levels depending on her pain."  (R. at 351).  Accordingly, the ALJ's evaluation of Plaintiff's credibility is unsupported by substantial evidence.

### C. Reversal and Award of Benefits is Appropriate

The only remaining issue is whether the matter should be remanded to the Commissioner for further administrative proceedings or if a judicially-ordered award of benefits is appropriate. The statutory provision authorizing the commencement of this action provides a reviewing court with the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  An immediate award of benefits is justified only where "the evidentiary record has been fully developed" and where "the evidence as a whole clearly points in favor of a finding that the claimant is statutorily disabled." *Ambrosini v. Astrue*, 727 F.Supp.2d 414, 432 (W.D. Pa. 2010) (citing *Morales*, 225 F.3d at 320)).

Here, there is an extensive, fully developed record, which the ALJ erroneously rejected. A review of this evidence as a whole clearly points in favor of finding that Plaintiff is statutorily disabled because two uncontradicted treating specialists opined, on independent and separate grounds, that Plaintiff's conditions would cause her to be absent from work at least three days per month. At the administrative hearing, the vocational expert testified that an employer will tolerate no more than one to two absences per month. (R. at 63). The treating neurologist further opined that Plaintiff's "condition will definitely exceed 12 months in duration." (R. at 694). Consequently, Plaintiff has clearly established that she is entitled to a favorable disability determination. The Court finds that if it were to remand the matter for further proceedings, the record is unlikely to change and it would only cause undue delay to Plaintiff, which she has already experienced through no fault of her own. *See Morales*, 225 F.3d at 320. Therefore, the Court finds that Plaintiff is disabled and entitled to disability benefits.

**VII.    Conclusion**

Based on the foregoing, Plaintiff's Motion for Summary Judgment is **GRANTED** and Defendant's Motion for Summary judgment is **DENIED**. The administrative decision of the Commissioner is **REVERSED**, and Plaintiff will be awarded DIB. An appropriate Order follows.

By the Court:

s/ Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge

cc: All counsel of record via CM-ECF

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SUSAN BASH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 13-741 |
| v. ) | United States Magistrate Judge |
| ) | Cynthia Reed Eddy |
| CAROLYN W. COLVIN, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**ORDER**

AND NOW, this 8th day of April, 2014, for the reasons set forth in the foregoing Memorandum Opinion, IT IS HEREBY ORDERED THAT Plaintiff's Motion for Summary Judgment (ECF No. 10) is **GRANTED**; Defendant's Motion for Summary Judgment (ECF No. 13) is **DENIED;** and the decision of the Commissioner is **REVERSED,** and the matter is remanded to the Commissioner for an award of disability insurance benefits.

By the Court:

s/ Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge

cc: All counsel of record via CM-ECF